UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGEL GRIMALDO,                                                                No. 20-11770-t7

    Debtor.

NATIONWIDE JUDGMENT RECOVERY INC.,

    Plaintiff,

v.                                                                                              Adv. No. 20-1076-t

ANGEL GRIMALDO aka SUPREMEKING,

    Defendant.

## OPINION

    Defendant invested in the ZeekRewards program, which operated out of Lexington, North Carolina between 2011 and 2012. The program turned out to be a Ponzi scheme. Unlike most investors, Defendant got more out of the program than he put in. ZeekRewards was put into receivership when the scheme unraveled. The receiver filed a class action suit against "net winners" like Defendant and in 2016 obtained a judgment avoiding the net winnings (about $50,000 plus interest in Defendant's case) as fraudulent transfers. Defendant responded by filing this chapter 7 case. Plaintiff, the assignee of the judgment against Defendant, thereupon filed this adversary proceeding, seeking a declaration that Defendant's debt to Plaintiff is nondischargeable because it is for money obtained by actual fraud.

    The parties have filed cross motions for summary judgment. The key issue is whether Defendant intended to defraud the creditors of ZeekRewards by accepting his net winnings. Plaintiff asserts that the undisputed facts demonstrate Defendant's fraudulent intent. Defendant,

on the other hand, argues that there is *no* evidence of his fraudulent intent. The Court concludes that the sparse record reveals a genuine dispute about Defendant's state of mind when he received his "net winnings" from the Ponzi scheme. Both motions will therefore be denied.

A.  Facts.[1]

The Court finds that there is no genuine dispute about the following facts:

In 2010, Paul Burks, through his company Rex Venture Group, LLC ("RVG"), launched a penny auction website called Zeekler.com. In a penny auction, participants purchase the right to bid on an item up for auction. The auctions make money by charging for all bids, whether or not the bidder wins the auction. In the case of Zeekler, participants could purchase bids for 65¢. Each bid placed by a participant would raise the price of the auctioned item by 1¢. The auctions were for a set amount of time, but each bid extended the auction by 30-60 seconds. An auction ended after the last bid had been made and the extended time had expired. The winning bidder was always the last bidder.

Zeekler.com apparently was legitimate but not very profitable. In 2011, Burks and RVG created ZeekRewards, which was advertised as a way for Zeekler users to make passive income while marketing the penny auction site to others. Instead of 65¢ bids, investors could buy $1.00 "VIP" bids, which promised to return a share of total profits to purchasers who placed online ads for Zeekler. Investors could earn additional returns by recruiting others to buy bids and place ads. Returns of 125% per quarter were projected.

---

[1] The Court derives its facts, in part, from the Uncontroverted Facts parties have agreed to in their amended pretrial order. The Court adopts *Bell v. Disner*, 2016 WL 7007522 (W.D.N.C.) to the extent it provides background information on the ZeekRewards Ponzi scheme and litigation. The Court further takes judicial notice of its docket in this proceeding and in Defendant's main bankruptcy case, to consider the contents of the dockets but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

Defendant invested $638 in the ZeekRewards program between February 2011 and July 2012. From October 2011 through August 2012, Defendant received $52,815.60 from ZeekRewards, for "net winnings" of $52,177.

Zeekler was not nearly profitable enough to earn 125% per quarter for its investors. Instead, it took proceeds from the sale of VIP bids and passed them off as profits to ZeekRewards' early investors.

On August 17, 2012, the Securities and Exchange Commission filed suit against Burks and RVG in the United States District Court for the Western District of North Carolina, alleging, inter alia, that they were engaged in a Ponzi scheme. Burks/RVG consented to a judgment shutting down ZeekRewards, freezing assets, and appointing Kenneth Bell as the receiver. Bell was authorized "to institute actions and legal proceedings seeking the avoidance of fraudulent transfers, disgorgement of profits, imposition of constructive trusts and any other legal and equitable relief that the Receiver deems necessary and appropriate to preserve and recover RVG's assets for the benefit of the Receivership Estate."

In 2014, Bell brought a class action in the same court against the investors who had made at least $1,000 from ZeekRewards, seeking to avoid the payment of the net winnings as fraudulent transfers. The action was brought pursuant to a state law fraudulent transfer statute.[2]

Bell filed a motion for summary judgment avoiding the payments from ZeekRewards to the defendants and imposing a constructive trust on the payments or any assets obtained therewith. The district court granted the motion on November 29, 2016 (the "North Carolina Judgment").[3]

---

[2] The North Carolina Uniform Fraudulent Transfer Act permits avoidance of transfers made "[w]ith intent to hinder, delay, or defraud any creditor of the debtor." N.C. Gen. Stat. § 39-23.4(a)(1).
[3] 2016 WL 7007522 (W.D.N.C.).

The judgment entered against Defendant was for $70,071.41, which included his net winnings and $17,894.21 in prejudgment interest.

The receiver assigned his interest in the judgment to Plaintiff in December 2019. Defendant filed this bankruptcy case on September 10, 2020. On his Schedule E/F, he listed a $70,000 "Collections account" debt. On December 21, 2020, Plaintiff brought this adversary proceeding to determine the dischargeability of the debt pursuant to § 523(a)(2)(A).[4] The parties filed cross motions for summary judgment.

Defendant made the following statements in response to Plaintiff's requests for admission:

- He did not review any of ZeekRewards' financial statements or tax returns;
- He did not request any of ZeekRewards' financial information;
- He willingly participated in ZeekRewards because it was profitable;
- He was paid for recruiting other participants, and the more people he recruited, the more money he would make;
- He participated in ZeekRewards because it promoted a lucrative compensation plan and offered a large amount of passive income;
- He did not know ZeekRewards was a Ponzi scheme or that he was participating in a Ponzi scheme;
- He believed that between the investments he made and the work that he did for the company, ZeekRewards received reasonably equivalent value for the transfers made to him;
- Instead of taking daily cash payments from ZeekRewards, he would reinvest his earnings, so the total amount he paid or invested in ZeekRewards was much larger than $638;
- He was not familiar with Ponzi and/or multi-level marketing schemes and had never participated in one before; and
- He and thousands of others were tricked into the ZeekRewards scheme, and the operators of it did everything they could to make it seem legitimate.

---

[4] All statutory references are to 11 U.S.C. unless otherwise indicated. This subsection provides that "[a] discharge under section 727…of this title does not discharge an individual debtor from any debt…for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…false pretenses, a false representation, or actual fraud…."

B.  Summary Judgment Standards.

"A party may move for ... [and t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056. Here, the Court must address the merits of the cross motions:

> [C]ross-motion[s] must independently satisfy the requirements of Rule 56(c) [procedures regarding factual assertions]. *See Renfro v. City of Emporia*, 948 F.2d 1529, 1534 (10th Cir. 1991) (cross-motion for summary judgment does not relieve court of obligation to determine if genuine issue of material fact exists); *SEC v. American Commodity Exch., Inc.*, 546 F.2d 1361, 1365 (10th Cir. 1976) (while cross-motions raises inference that summary judgment is appropriate, it "does not result in any waiver of judicial determination of whether a material issue of fact exists on either side of the case.")

*In re Harris*, 209 B.R. 990, 998 (10th Cir. BAP 1997).

C.  Plaintiff's Motion for Summary Judgment.

Plaintiff argues that it is entitled to summary judgment that Defendant's debt is nondischargeable as procured by actual fraud. The key issue in dispute is Defendant's intent when he received his net winnings.

In support of its argument, Plaintiff relies on *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016). In *Husky*, respondent took assets from one company he directed and partially owned and transferred them to several other companies he had ownership interests in. *Id.* at 1585. The Fifth Circuit held that no actual fraud had occurred for § 523(a)(2)(A) purposes because the respondent made no misrepresentations. *Id.* at 1586. The Supreme Court reversed, holding that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id. Husky* further held that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* This is in contrast to fraud implied by law, which does not require such intentional wrongdoing. *Id.*

The *Husky* court stated:

> § 523(a)(2)(A) [requires] that the relevant debt be "for money, property, services, or...credit...*obtained by*...actual fraud." (Emphasis added.) . . . the dissent . . . posits that fraudulent conveyances (unlike other forms of actual fraud) cannot be used to "obtai[n]" debt because they function instead to hide valuables that a debtor already possesses. . . . There is, the dissent says, no debt at the end of a fraudulent conveyance that could be said to "'resul[t] from'" or be "'traceable to'" the fraud…. It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. . . . If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance…will be nondischargable under § 523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare…but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Id.* at 1589 (citations omitted).

Based on *Husky*, there is little question that a judgment avoiding the transfer of assets, entered against a transferee who later files a bankruptcy case, would be nondischargeable under § 523(a)(2)(A) *if the transferee/debtor obtained the assets with fraudulent intent*. As such, *Husky* shows the bona fides of Plaintiff's nondischargeability claim against Defendant. Whether Plaintiff can prevail on this theory, however, will depend on proof that Defendant had the requisite fraudulent intent.

Next, Plaintiff relies on the "Ponzi scheme presumption" to support its summary judgment motion. The North Carolina court relied on this presumption to conclude that the transfers made to the net winners were avoidable under the North Carolina statute:

> Many courts have held that the intent to defraud can be presumed when transfers are in furtherance of a Ponzi scheme. The "Ponzi scheme presumption" has been long settled in a number of jurisdictions and under an analogous section of the Bankruptcy Code.
> Bankruptcy Code Section 548(a)(1)(A) provides that a trustee may avoid a transfer of an interest of the debtor in property, if the debtor made such transfer with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A). A majority of federal courts have held that proof of operation of a Ponzi scheme is sufficient

-6-
Case 20-01076-t    Doc 37    Filed 08/20/21    Entered 08/20/21 15:25:13 Page 6 of 10

> to establish actual intent to hinder, delay, or defraud creditors to permit avoidance of a fraudulent transfer under section 548(a)(1)(A). *See*, *e.g.*, *Gold v. First Tenn. Bank, N.A. (In re: Taneja)*,…2012 WL 3073175 (E.D. Va. Jul. 30, 2012)….
> Courts in the Receivership context outside bankruptcy also routinely apply the Ponzi scheme presumption to avoid fraudulent transfers. *Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014); *Wing v. Dockstader*, 482 Fed. Appx. 361, 363 (10th Cir. 2012)….
> The U.S. Bankruptcy Court for the Middle District of North Carolina held that the "Ponzi scheme presumption" of actual fraudulent intent also arises in fraudulent transfer actions brought under N.C. Gen. Stat. § 39-23.4(a)(1). *Ivey v. Swofford (In re Whitley)*, 463 B.R. 775, 781 (Bankr. M.D.N.C. 2012)….
> There is no genuine issue of material fact that ZeekRewards operated as a Ponzi scheme. Accordingly, the law considers transfers from the scheme to be fraudulent transfers that may be avoided under the [North Carolina Uniform Fraudulent Transfer Act].

North Carolina Judgment at *10–11.

Plaintiff's reliance is misplaced; the Ponzi scheme presumption applies only to the intent of the Ponzi scheme perpetrators, not to the intent of the people they lure into the scheme. *See, e.g., Wiand v. Lee,* 753 F.3d 1194, 1201 (11th Cir. 2014); *In re AFI Holding, Inc.,* 525 F.3d 700, 704 (9th Cir. 2008); *S.E.C. v. Resource Dev. Int'l, LLC,* 487 F.3d 295, 301 (5th Cir. 2007); *In re Petters Co., Inc.*, 495 B.R. 887, 907 (Bankr. D. Minn. 2013) *In re Polaroid Corp.*, 472 B.R. 22, 40-41 (Bankr. D. Minn. 2012); *In re Dreier LLP*, 452 B.R. 391, 424 (Bankr. S.D.N.Y. 2011). Defendant, a transferee, is not subject to the Ponzi scheme presumption.

Finally, Plaintiff cites the following evidence in support of its argument that Defendant had the "requisite intent" to commit actual fraud: (1) Defendant never requested any of ZeekRewards' financial information; (2) Defendant did not request or review any ZeekRewards financial statements or tax returns before investing; (3) Defendant invested in the ZeekRewards program because it was profitable, promoted a lucrative compensation plan, and offered a large amount of passive income; and (4) Defendant was paid for recruiting other participants to the ZeekRewards

scheme, and the more people Defendant recruited to ZeekRewards, the more money he would make.

This evidence may be sufficient to support a finding of Defendant's fraudulent intent. However, it is contradicted by evidence that could reasonably support a finding of no fraudulent intent, e.g., Defendant's statements that did not know the ZeekRewards program was a Ponzi scheme; that he believed he gave ZeekRewards reasonably equivalent value for the money he received; that he invested much more than $638; that he and thousands of others were lured into the scheme and the operators did everything they could to make it seem legitimate; and that he was not familiar with Ponzi or multi-level marketing schemes and had never participated in one before.

In sum, there is a genuine fact issue about Defendant's intent. It would be inappropriate to draw conclusions about Defendant's intent from the skimpy, contradictory record before the Court. *See, e.g., In re Kelly*, 2016 WL 1558458, at *7 (Bankr. D.N.M.):

> [E]ven though a Court may infer a debtor's actual intent to hinder, delay, or defraud based on the existence of several badges of fraud, the focus of the Court's inquiry must be on the debtor's state of mind. "Because the Debtor's subjective intent is in issue, summary judgment is generally not an appropriate mechanism for adjudication of an actual fraudulent transfer claim." *Rieser v. Hayslip (In re Canyon Systems Corp.)*, 343 B.R. 615, 636 (Bankr. S.D. Ohio. 2006) (citations omitted).

Plaintiff's motion for summary judgment will be denied.

D.  Defendant's Motion for Summary Judgment.

Apart from his answers to Plaintiff's requests for admission, Defendant did not support his summary judgment motion with affidavit testimony or other evidence. Instead, Defendant argues that the North Carolina Judgment only ruled that ZeekRewards committed fraud; it made no such ruling about the net winners. Defendant argues that there is no evidence in the record that he had fraudulent intent. Finally, Defendant argues that Plaintiff did not plead fraud with particularity.

Asserting that the record does not reflect a genuine dispute about his intent, Defendant asks for a summary judgment of dischargeability.

The Court will overrule Defendant's arguments and deny his motion for summary judgment. Defendant is right that the North Carolina Judgment focuses solely on ZeekRewards' fraudulent intent, rather than the intent of the net winners. Furthermore, as discussed above, the "Ponzi scheme presumption" only applies to transferors. Nevertheless, there is a genuine dispute about Defendant's intent when he received his net winnings. While the evidence supporting fraudulent intent may be circumstantial, that is almost always the case. *See, e.g., In re Chuza Oil Co.*, 2021 WL 3025608, at *4 (Bankr. D.N.M.) ("However, '[i]ntent to hinder, delay, or defraud creditors is rarely admitted by a debtor[, t]herefore, a court may consider circumstantial evidence . . ." (citing *In re Kelsey*, 270 B.R. 776, 782 (10th Cir. BAP 2001) and *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338–39 (10th Cir. 1998))). Plaintiff's circumstantial evidence of fraudulent intent is sufficient to demonstrate a genuine dispute about Defendant's state of mind when he received his net winnings.

Next, Defendant's argument about the alleged failure to plead fraud with particularity has been waived. Defendant previously moved, under Rule 12(b)(6), for dismissal of the complaint for failure to state a claim upon which relief can be granted. The Court denied the motion. Pursuant to Fed. R. Civ. P. 12(g)(2), Defendant cannot file another motion under Rule 12 on grounds he omitted from his earlier motion.

In any event, the Court finds that Plaintiff has alleged fraud with sufficient particularity. The heightened pleading standard requires the complainant to "set forth the time, place and contents" of the fraud, "the identity of the party" perpetrating the fraud, "and the consequences thereof." *See, e.g., In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991). Plaintiff satisfied this

standard by alleging that Defendant's fraudulent acts were his acceptance of fraudulent transfers from ZeekRewards. Plaintiff attached to the complaint a spreadsheet breaking down exactly when Defendant got paid by ZeekRewards. Plaintiff alleges that the alleged fraud generated a windfall to Defendant at the expense of the participants in ZeekRewards who lost money.

Defendant's motion will be denied.

## Conclusion

Some evidence in the record could support a finding that Defendant intended to defraud ZeekRewards' creditors when he accepted his net winnings, while other evidence could support a contrary finding. There is a genuine dispute about this crucial fact, and no presumption applies. Because of that, summary judgment in favor of either party is not appropriate. The cross motions will be denied.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 20, 2021

Copies to: Counsel of record